**JUDGE BUCHWALD**

**06 CV 6893**

JOSEPH & HERZFELD LLP
Charles Joseph (CJ-9442)
757 Third Avenue
New York, New York 10017
(212) 688-5640

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—————————————————————x

KEVIN JACKSON,                                  Index No.

                                                COMPLAINT

                    Plaintiff,
                                                JURY TRIAL DEMANDED

- against -

STRUCTURE TONE, INC.

                    Defendant.

—————————————————————x

        Plaintiff Kevin Jackson ("Plaintiff"), by his attorneys, Joseph & Herzfeld LLP,

alleges:

## NATURE OF THE CASE

1.      This action is brought against Defendant Structure Tone, Inc. ("Structure Tone" or

        "Defendant") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42

        U.S.C. § 2000e *et seq*. ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the New

        York Human Rights Law ("NYSHRL"), N.Y Exec. Law § 296, and New York City

        Human Rights Law, N.Y.C. Admin. Code §8-107 *et seq* ("NYCHRL") for race

discrimination and retaliation for opposing race discrimination under Title VII
Section 1981, NYSHRL, and the NYCHRL, and for disability discrimination under
the NYSHRL and the NYCHRL.

2.   A copy of this Complaint has been provided to the New York City Commission on
Human Rights.

## JURISDICTION AND VENUE

3.   This Court has subject matter jurisdiction over the Title VII and Section 1981 claims
because they arise under the laws of the United States and are brought to recover
damages for deprivation of equal rights, and supplemental subject matter jurisdiction
over the NYSHRL and NYCHRL claims under 28 U.S.C. § 1367, because they arise
from a common nucleus of operative facts with the federal claims and are so related to
the federal claims that they form part of the same case or controversy under Article III
of the United States Constitution.

4.   Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), and 42 U.S.C.
§ 2000e-5(f)(3), because Defendant has offices, conducts business, and can be found
in this District, and because the causes of action arose and the acts and omissions
complained of occurred in this district.

## PARTIES

5.   Plaintiff Kevin Jackson resides at 65 Plane Tree Road, Stratford, Connecticut, 06614.

6.   Defendant Structure Tone is a New York corporation with its headquarters and
principal place of business at 770 Broadway, New York, NY, 10003.

2

7.   Structure Tone is a construction management company that employs at least 15
     employees.

## FACTUAL HISTORY

8.   In or about May 2000, Plaintiff began working at Structure Tone as Vice President
     of Corporate Marketing and Communications.

9.   Plaintiff was initially hired to work under company President Anthony Carvette.

10.  Plaintiff is black.

11.  Following his hire, Plaintiff was assigned to a secretarial cubicle outside of Mr.
     Carvette's office.

12.  Plaintiff was surprised to have been assigned to a secretarial station, as he had been
     hired for a senior position.

13.  After nearly eight months, during which Plaintiff was not provided with adequate
     staff due to stated "lack of financial resources," Plaintiff finally moved into an
     office. However, as a result of Plaintiff's eight month cubicle post, his position at
     Structure Tone was belittled, and he was treated with a lack of respect by his
     coworkers.

14.  The only other black employee in an executive position at Structure Tone's New
     York location was Jason Reynolds.

15.  Mr. Reynolds was also not given a place to work and often had to share space with
     Plaintiff or another employee.

16.  Despite the difficult circumstances surrounding his work, Plaintiff received
     excellent performance evaluations and was rated as "Exceeds Expectations" in his

3

first evaluation.

17.   In the Fall of 2001, Director of Human Resources Robert Yardis mentioned several times to Plaintiff that Chief Executive Officer James Donaghy had "a problem" with Plaintiff going to lunch with Mr. Reynolds (the other black executive), who provided marketing support and graphic design services for Plaintiff's division.

18.   Plaintiff responded that because Mr. Reynolds was his associate, it was important that the two of them meet for lunch to maximize their productivity at the office.

19.   Mr. Yardis explained to Plaintiff that it did not "look good" for Plaintiff and Mr. Reynolds to leave the office together.

20.   Plaintiff is blind in one eye.

21.   On several occasions, Mr. Carvette and other senior management ridiculed Plaintiff on the subject of his disability. Mr. Carvette's comments to Plaintiff included, "Look at it with your good eye," and "Maybe you can see it better with the other eye."

22.   On one occasion, Mr. Donaghy belittled Plaintiff in the presence of his coworkers, saying, "I don't know why you are even here. Can you tell me what value you are adding to the company?"

23.   Plaintiff was humiliated by the discriminatory treatment described above.

24.   Despite Defendant's discrimination, Plaintiff remained an excellent employee.

25.   Plaintiff created new corporate graphic and proposal standards and consistently won major projects for Structure Tone; in fact, some of the largest projects in the history of the company were the result of Plaintiff's work.

26.   In addition, Plaintiff redesigned the company newsletter, and the company website.

4

27.    In or about November 2002, after Plaintiff worked approximately one and a half
       years with Mr. Carvette of Corporate Marketing initiatives, Mr. Carvette suddenly
       told Plaintiff that he would be assigned to manage the New York marketing group
       in addition to his previous corporate responsibilities.

28.    The position was a demotion for Plaintiff, as he was now directly responsible for a
       position that he had previously managed.

29.    Plaintiff was moved out of his office and assigned to a back office that had
       previously served as a mailroom. The office was small and dirty.

30.    After becoming manager of Structure Tone's New York division, Plaintiff was not
       provided with sufficient staff support, nor was he given the resources necessary to
       do his job.

31.    Plaintiff was eventually told that instead of reporting to Mr. Carvette he would be
       reporting to Mr. Donaghy.

32.    On several occasions, Mr. Donaghy told Plaintiff, "I want you to think of yourself as
       a marketing agent about to be fired."

33.    In September of 2002, Mr. Donaghy told Plaintiff that the New York office was
       "doing fine" and that Plaintiff would need to shift his focus toward the regional
       offices. As described below, Mr. Donaghy intentionally created a working
       environment that made it impossible for Plaintiff to succeed.

34.    Plaintiff replied that he was short-staffed in the New York office, and that to
       properly support the regional offices he would need additional staff members.

35.    While Mr. Donaghy assured Plaintiff that Structure Tone would provide him with
       the staff he needed, it never did.

5

36.  When Plaintiff submitted written requests for additional staff to Human Resources, he was ignored.

37.  In an effort to intimidate Plaintiff, and despite Plaintiff's excellent performance, Mr. Donaghy repeatedly threatened Plaintiff's job, privately and in front of coworkers.

38.  In or about October 2003, Mr. Donaghy called Plaintiff into his office, where Mr. Donaghy's sister Eileen was present.

39.  Mr. Donaghy belittled Plaintiff by asking Eileen, "Do you think you can do his job?" and then stating to Eileen, "Eventually you will be his boss."

40.  In or about June 2004, Mr. Donaghy told Plaintiff that he had hired Robin Malacrea, a Caucasian, as Vice President of Corporate Marketing, Plaintiff's job title at the time.

41.  This immediately followed Plaintiff's leading a marketing effort to secure one of the largest projects in the history of Structure Tone.

42.  When Plaintiff asked Mr. Donaghy if this meant that he was terminated, and why he had been replaced as Vice President of Corporate Marketing, Mr. Donaghy replied, "She doesn't have as much experience as you do, but you are going to report to her." Mr. Donaghy told Plaintiff that he "would understand" if Plaintiff quit.

43.  Plaintiff had previously interviewed Ms. Malacrea for the position of Manager of New York Marketing and did not hire her because she had limited management experience.

44.  Plaintiff was informed of Ms. Malacrea's hire on a Friday, and she was to begin work the following Monday.

45.  After Ms. Malacrea took the position, Plaintiff, who was assigned to train her, was

6

excluded by Mr. Donaghy and Mr. Carvette from all discussion regarding strategic business planning.

46.   Plaintiff was also excluded by Mr. Donaghy from Structure Tone's annual meeting, which he had organized every year since he began his employment with the company.

47.   Shortly after Ms. Malacrea began working at Structure Tone, Structure Tone allowed her to hire a Manager of Corporate Marketing and a Graphic Artist, hires that Plaintiff was repeatedly denied over the course of his employment with Structure Tone.

48.   In or about August 2003, Mr. Donaghy told Plaintiff to terminate Mr. Reynolds, the only other black executive at Structure Tone's New York office.

49.   Plaintiff replied that Mr. Reynolds was his only source of quality support on major proposals and that he received excellent performance evaluations.

50.   As Mr. Reynolds was an excellent performer, there was no plausible reason to terminate him, and it was clear that the termination would have been based solely on Mr. Reynolds' race. In addition, Plaintiff believed that Structure Tone had specifically asked Plaintiff to carry out the termination because, being that Plaintiff is black, the termination would not appear discriminatory.

51.   Plaintiff stated that he would terminate Mr. Reynolds only if Mr. Donaghy provided him with a valid reason for doing so.

52.   Mr. Donaghy's response was that as Chief Executive Officer, he did not need a reason to terminate Mr. Reynolds. Mr. Donaghy further stated that if Plaintiff refused to terminate Mr. Reynolds, Mr. Donaghy would "wait until Mr. Reynolds

arrived late to work" and would terminate him then.

53. On or about August 31, 2004, Structure Tone retaliated against Plaintiff for vindicating Mr. Reynolds' rights.

54. Plaintiff was called into the conference room to meet with Mr. Donaghy and Mr. Yardis and was informed that the company was going to terminate him because it was "moving in a different direction."

55. Plaintiff's replacement, who was to begin working the following Monday, had neither the computer skills nor the experience necessary for the position.

56. Plaintiff was replaced by a white employee.

57. On or about April 1, 2005, Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC), for race and disability discrimination.

58. On or about May 12, 2006, the EEOC issued a determination of reasonable cause in favor of Plaintiff.

59. On June 21, 2006, Plaintiff received a Notice of Right to Sue from the EEOC.

## COUNT I
## Section 1981

60. Plaintiff incorporates by reference each allegation of each preceding paragraph.

61. In violation of Section 1981, Defendants intentionally discriminated against Plaintiff on the basis of his race, color and ethnicity by:

62. subjecting Plaintiff to a hostile work environment that was severe or pervasive enough to alter the terms and conditions of his employment; and

63. discharging Plaintiff.

## COUNT II
### (Title VII – Race Discrimination)

64.  Plaintiff incorporates by reference each allegation of each preceding paragraph.

65.  In violation of Title VII, Defendant intentionally discriminated against Plaintiff on
     the basis of his race, color and ethnicity by:

66.  subjecting Plaintiff to a hostile work environment that was severe or pervasive
     enough to alter the terms and conditions of his employment; and

67.  discharging Plaintiff.

## COUNT III
### Title VII – Retaliation

68.  Plaintiff incorporates by reference each allegation of each preceding paragraph.

69.  In violation of Title VII, Defendant retaliated against Plaintiff for protected conduct by
     terminating him after he complained of race discrimination on behalf of a coworker.

## COUNT IV
### NYSHRL – Race Discrimination

70.  Plaintiff incorporates by reference each allegation of each preceding paragraph.

71.  In violation of NYSHRL, Defendants intentionally discriminated against Plaintiff
     on the basis of his race, color and ethnicity by:

72.  subjecting Plaintiff to a hostile work environment that was severe or pervasive
     enough to alter the terms and conditions of his employment; and

73.  discharging Plaintiff .

9

## COUNT V

### NYSHRL – Retaliation

74.   Plaintiff incorporates by reference each allegation of each preceding paragraph.

75.   In violation of NYCHRL, Defendant retaliated against Plaintiff for protected conduct

      by terminating him after he complained of race discrimination on behalf of a

      coworker.

### COUNT VI
### NYSHRL – Disability Discrimination

76.   Plaintiff incorporates by reference each allegation of each preceding paragraph.

77.   In violation of NYCHRL, Defendants intentionally discriminated against Plaintiff

      on the basis of his disability by:

78.   subjecting Plaintiff to a hostile work environment that was severe or pervasive

      enough to alter the terms and conditions of his employment; and

79.   discharging Plaintiff.

### COUNT VII
### NYCHRL – Race Discrimination

80.   Plaintiff incorporates by reference each allegation of each preceding paragraph.

81.   In violation of NYCHRL, Defendants intentionally discriminated against Plaintiff

      on the basis of his race, color and ethnicity by:

82.   subjecting Plaintiff to a hostile work environment that was severe or pervasive

      enough to alter the terms and conditions of his employment; and

83.   discharging Plaintiff.

10

## COUNT VIII
### NYCHRL – Retaliation

84. Plaintiff incorporates by reference each allegation of each preceding paragraph.

85. In violation of NYCHRL, Defendant retaliated against Plaintiff for protected conduct by terminating him after he complained of race discrimination on behalf of a coworker.

## COUNT VIIII
### NYCHRL – Disability Discrimination

86. Plaintiff incorporates by reference each allegation of each preceding paragraph.

87. In violation of NYCHRL, Defendants intentionally discriminated against Plaintiff on the basis of his disability by:

88. subjecting Plaintiff to a hostile work environment that was severe or pervasive enough to alter the terms and conditions of his employment; and

89. discharging Plaintiff.

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

A. declaring that Defendant's actions and practices violated Title VII, Section 1981, the NYSHRL, and the NYCHRL;

B. permanently enjoining Defendant from engaging in actions or practices that discriminate against any employees or job applicants because of their race, ethnicity, color, and/or disability;

C. directing Defendant to make plaintiff whole by providing him front pay, back pay,

11

reimbursement for any and all lost benefits, and reimbursement for any and all medical expenses for injuries caused or exacerbated by Defendant;

    D.    directing Defendant to pay Plaintiff compensatory damages for his emotional

distress caused by Defendant's discrimination and harassment against him;

    E.    directing reinstatement;

    F.    directing Defendant to pay Plaintiff punitive damages sufficient to punish and deter

continuation of Defendant's unlawful employment practices;

    G.    awarding Plaintiff reasonable attorney's fees and costs;

    H.    granting additional relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated:    New York, New York
          September 7, 2006

Respectfully submitted,

Joseph & Herzfeld LLP

By: _____
Charles Joseph (CJ-9442)

757 Third Avenue
25th Floor
New York, NY 10017

*Attorneys for Plaintiff*

12